## LAMB *v.* PERE MARQUETTE RAILWAY CO.

1. RAILROADS—NEGLIGENCE—EXCESSIVE SPEED—QUESTION FOR JURY.
    In an action against a railroad company for personal injuries, where the negligence relied on was the excessive speed of the train within the city limits, conflicting testimony as to its speed, varying from 15 to 25 miles an hour, *held*, to present a question of fact for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    Where plaintiff in an automobile waited at a crossing with which he was familiar, and which was not "beset with many difficulties," until a passing freight train cleared the crossing, and then, without waiting for the train to pass far enough to give him clear vision of the main track, drove thereon and was struck by a fast pas-

As to the care required of the driver of an automobile at railroad crossings, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

221—Mich.—18.

senger train coming from the opposite direction, which he knew was due at that time, he was guilty of contributory negligence as a matter of law.

Error to Gratiot; Moinet (Edward J.), J. Submitted April 7, 1922. (Docket No. 41.) Decided December 29, 1922.

Case by Edward T. Lamb against the Pere Marquette Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Parker, Shields & Seaton* (*John T. Mathews,* of counsel), for appellant.

*Bahlke & Braun,* for appellee.

STEERE, J. Plaintiff had judgment against defendant for damages sustained in a railway crossing accident at Republic avenue in the city of Alma, Michigan. Defendant seeks review and reversal on various assignments of error, the one most stressed being that plaintiff's contributory negligence precluded recovery. The accident occurred about 10:20 a. m. of October 5, 1920, at the intersection of Republic avenue with defendant's right of way through the city of Alma, which runs in an easterly and westerly direction and is 100 feet wide at that point. Its main line is in the center of the right of way with a side or switching track paralleling it between 8 and 9 feet further south.

Plaintiff was a physician 48 years of age who had practiced his profession in the city of Alma for upwards of 20 years, and was familiar with conditions at and in the vicinity of the crossing where he was injured. Shortly before the accident occurred he drove into Alma from the east in a Dodge coupé with the windows down and wind-shield up, going west along Superior street, which is the main thoroughfare east

and west through the city. On reaching Republic avenue, which intersects Superior street at right angles, he turned and drove north, on that avenue towards the Pere Marquette railway where he saw a freight train moving slowly west on the sidetrack past the crossing. From the center of Superior street along Republic avenue to the center of defendant's right of way is 267 feet. Defendant's line bears somewhat northeasterly and southwesterly through that section of the city at an angle to Superior street which it reaches near Grover avenue about 80 rods west of Republic avenue.

Plaintiff drove up to within 13 or 14 feet of the freight train where he stopped close by a witness named Birmingham who sat in his car just east of him waiting to cross and talked with him for a short time. When he arrived there all but one or two cars of the freight train had passed the crossing. It consisted of an engine at the west end followed by three gondola coal cars about 8 feet high from the track, a tank car about the same height and at the rear 3 box cars about 12 feet high from the track, the train being in all about 340 feet in length. From where he had stopped his view to the west along the main track, closely paralleling the siding on its north, was necessarily cut off by the close passing freight train within the angle of his vision which it blanketed to the west along the main track. After it had cleared the street he started his car, looking as he testified east and west, and drove past the rear of the freight train onto the main railroad track just in time to be struck by a fast passenger train from the west running on schedule time of which he admitted he knew but said he did not recall having it distinctly in mind at that time. His coupé was struck about the middle by the engine of the train and thrown or carried upwards of 50

feet with him in it, injuring him severely and wrecking the coupé.

The grounds of negligence alleged against defendant in plaintiff's declaration and in issue on the trial were excessive speed and failure to give the crossing signals. The engineer and fireman, as well as others who saw the oncoming passenger train and collision at the crossing, testified that the crossing signals were given by whistle of the locomotive and the engine bell ringing as the train approached, while plaintiff testified that he listened for them and they were not sounded and others near the scene of the accident gave evidence to like effect. The estimates of various witnesses as to the speed of the train ranged from 15 to 25 miles an hour. The conflicting testimony clearly made these issues questions of fact.

The accident occurred about a mile and a half east of defendant's railway station at Alma just west of the Republic Motor Truck Company's factory which is located south of the railway and north of Superior street on the east side of Republic avenue. The long triangle to the west, formed by defendant's right of way as an hypothenuse on its northerly line, Superior street running directly east and west on its south and Republic avenue running north and south on its east, furnished comparatively few obstructions to a westward view over it from Republic avenue. On this triangle there were along and near Superior street a warehouse, or "shed" as plaintiff called it, a coal pile and two lumber piles. The warehouse was at the northwest corner of Superior street and Republic avenue. North of it in Republic avenue on the west side were a guy pole and two electric poles. North of it west of the avenue were a clump of bushes and two trees, one being an elm 3 inches in diameter near a fence extending west along the right of way for a short distance. Plaintiff testified that on entering

Republic avenue from Superior street his view of the railroad to the west was at first obstructed by the shed and coal pile, but after he passed these obstructions he had a clear view to the west in which direction he looked and drove slowly north towards the passing freight train watching the tracks, and stopped his auto within 13 or 14 feet of the freight train passing on the side track where he looked in both directions and also at the passing freight train. The freight train had switched onto the side track just east of Republic avenue, leaving a brakeman to close the switch, and after it cleared the crossing stopped for him to get on before proceeding. Plaintiff testified:

"It stopped right by, almost in the line with the transmission poles at the west margin of the road, almost even with the line of poles; the rear end stopped I should say about 18 feet from my car on an angle, the rear of the freight train was northwest of me. * * * I thought may be it would back up or go forward, but it stopped and seemed to be standing still so I looked to the east and west to see if there was any reason why I shouldn't cross and I was a little crazy to cross but I was pretty sure that they would ring the bell or blow a whistle if they were going to back up and they didn't so I went ahead."

While plaintiff was sitting in his auto watching for the rear car of the freight train to clear the crossing the brakeman who had dropped off to close the switch ran across the road directly in front of him and jumped on to the rear car, signaling the engineer just before he reached it to go ahead, which he did. Plaintiff admitted seeing him, but said he was not clear that he saw him "going over there and getting on the train." Of the train with which he collided he said, "I don't remember seeing the passenger train at all. I don't remember hearing it at all." His motor was then making some noise, and also the freight train

which had started up as well as the approaching
passenger train. Plaintiff testified that as he passed
the rear of the freight train he looked to the east and
being asked if he looked to the west answered, "I
didn't have time to I don't believe. I can answer
that question I think I did." He also testified elsewhere
upon the subject:

"I looked for a train, I didn't see one. You
see as the freight train went down it obstructed
my view farther. I think I could see down the track
before this balance went by, I could see on the south
side of the freight train from the position I sat in."

Amongst others who testified to hearing and seeing
the approaching passenger train from different points
in that vicinity, a witness called by plaintiff named
Walker was standing by a post 100 feet south of the
south rail and saw him drive up and stop close to
the passing freight train. He testified that while yet
standing by the post he heard the whistle of the
passenger train, which he first saw coming from down
near Grover avenue about 80 rods away, and he con-
tinued to see it until it passed out of his sight be-
hind the freight train. Then noticing plaintiff start
his auto he ran forward in an effort to stop him, and
"hollered at him," but could not make him hear or
reach him in time, although he was within about 50
feet of him when the accident occurred.

Plaintiff was a man of mature years with unim-
paired sight and hearing. He was thoroughly familiar
with this crossing and knew that a passenger train
was due from the west to pass over the main track
just north of the siding upon which the freight train
was passing from the east at 10:20 a. m., the time
he was about to cross. He knew that except for the
moving freight train his view to the west was un-
obstructed, and that from but a comparatively short
distance south on Republic avenue he could see an

approaching train a quarter of a mile to the west. He knew if he observed what was transpiring close around him when he started to cross that the freight train had picked up its brakeman and started on. Close up to the south side of the track at the rear of the freight train he knew it cut off his view of the main track for a considerable distance at least to the west and that it would, as he states, obstruct his view farther as it went down to the west. Knowing all this, it was his duty to take reasonable precautions before driving upon the track to avoid the possible danger confronting him, which he could easily have done by stopping 100 feet south of the siding near where his witness Walker stood or by waiting until the freight train had gone sufficiently far to give him a safe view down the main track. Conceding that he was alert in looking and listening where he stopped, his own testimony shows that he stopped, looked, and listened at a place and time where he could neither see nor hear the approaching train which was close upon him when he started to cross, while others in various locations near by with no such incentive to observe saw and heard it coming in the distance. He did not stop, look, and listen long enough at the last clear chance which could avail him, but, as he states, "a little crazy about crossing," and anxious to proceed on his way, he stopped close behind a moving obstruction which blanketed his vision of the main track to the west over which a train was then due, and, without waiting for his view to clear in that direction, proceeded to cross the danger zone as many others have done regardless of possible danger near in the direction they could not see.

Without again reviewing the rule and reasons therefor stated in *Colborne* v. *Railway,* 177 Mich. 139; *Sanford* v. *Railway Co.,* 190 Mich. 390, and analogous cases, we are of opinion this case falls within that

class, and plaintiff has by his own evidence shown himself guilty of contributory negligence precluding recovery.

For plaintiff it is contended that this cause is within an exceptional class recognized by this court, where owing to proof of unusual stationary obstructions to a view along the track and confusing or misleading conditions of some kind at a dangerous crossing created by defendant, it has been held that whether under the exculpating circumstances shown claimed observations and other precautions taken before attempting to cross were such as reasonably careful and prudent men would and should take when in like situations was for the jury. In support of this contention *Nichols* v. *Railway Co.*, 203 Mich. 372, is particularly urged, amongst kindred cases cited, as answering all opposing meritorious questions, raised by the defense and sustained by the other cases referred to.

It may be first noted that in this case there was but a temporary passing obstruction which cut off plaintiff's clear view along the track to the west from the stopping point he selected. He was a traveler upon a public highway about to pass over a railroad crossing. As such it was his duty when a transient or temporary obstruction to his view intervened to wait in a place of safety until it was so far removed that he could ascertain with reasonable certainty that it was safe for him to proceed over the crossing. *Baltimore & Ohio R. Co.* v. *Mangus* (Ind. App.), 126 N. E. 863. In the *Nichols Case* the obstructions to plaintiff's view were fixed objects, buildings and dead freight cars spotted close to the highway. Unusual conditions contributed to the accident. The railroad was double tracked. After an east-bound train had passed, claiming they carefully looked and listened and could not hear or see any approaching west-bound train from where they stopped 10 feet north of the track,

they proceeded to cross and were struck by a west-bound, fast running, wild or special train consisting of an engine and caboose.

In the majority opinion holding plaintiff's negligence a question for the jury, it is said in part:

"Where plaintiff stopped, her view of the track to the east of the crossing was so completely obscured by the buildings of the milling plant and by the cars on the side track that she could get no view of the west-bound track until she passed the cars on the side track, as they stood very close to the highway. Had she stopped further north the view would have been no better. The distance between the side track and the west-bound track was less than 20 feet, and counsel argues that plaintiff should have driven into that space and stopped. We do not think we can say as a matter of law that plaintiff was guilty of contributory negligence for not driving onto the side track or into the space between the west-bound track and side track to make observations before proceeding to cross the tracks. Ordinarily when one gets within 10 feet of a railroad track and stops, his sense of hearing, if normal and diligently used, will determine whether it is safe to proceed. This crossing at the time, however, was beset with many difficulties (stating some of them). * * * Counsel urge that this case is ruled by *Sanford* v. *Railway Co.*, 190 Mich. 390. * * * Had Sanford exercised the care that the plaintiff did in stopping his car he probably would not have been in collision with the train."

We think equally strong controlling distinctions are discernible in the other cases relied on by plaintiff. It was the opinion of the trial judge that but for the *Nichols Case,* the *Sanford Case* would be controlling.

In the instant case the crossing was not "beset with many difficulties." The view was clear and unobstructed in each direction along the railroad from near it on the highway save for the passing freight train. Had plaintiff waited but a fraction of a minute in his place of safety for it to so far pass that he might

ascertain with reasonable certainty it was safe to proceed, as was his duty, the accident would have been avoided. He was not only familiar with the location, but twice testified that he knew there was a passenger train due from the west on that line at 10:20 a. m. He stated he returned to Alma that forenoon a little after 10 o'clock and drove through the city to this crossing which, as the facts show and he would have realized had he been reasonably alert to the situation, brought him there about the time that train was due. Stopping where he could not see or hear it approaching the crossing, according to his own testimony, and without waiting for a moment or so until he could have seen, he drove past the rear of the freight train directly in front of the east-bound train running on schedule time. The conclusion is unavoidable that the accident which befel him was, under the circumstances and in view of his knowledge as to conditions, largely imputable to his own contributory negligence.

The judgment is reversed, with costs, and a new trial ordered.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.