BRITTEN v. GRAND TRUNK WESTERN RAILWAY CO.

RAILROADS — AUTOMOBILES — CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE.

In an action against a railroad company for damages to plaintiff's automobile caused by a collision with defendant's train on a public crossing, where plaintiff, who was perfectly familiar with the conditions surrounding the crossing, the view being obstructed up to a point 18 feet from the track, when the front end of the automobile was approximately 10 feet therefrom, drove into the safety zone at such a rate of speed that she could not stop in time to avoid the accident, although the oncoming train was visible from the point of the first clear view, she was guilty of contributory negligence as a matter of law.

Error to Shiawassee; Collins (Joseph H.), J. Submitted June 14, 1923. (Docket No. 6.) Decided July 19, 1923.

Case by Laura Britten against the Grand Trunk Western Railway Company for damages to plaintiff's automobile. Judgment for plaintiff. Defendant brings error. Reversed, and no new trial ordered.

*W. K. Williams* (*H. Geer, H. R. Martin,* and *Pulver & Bush,* of counsel), for appellant.

*George E. Pardee,* for appellee.

CLARK, J. Plaintiff's automobile was struck and destroyed by a train of defendant on a crossing near the village of Bancroft. Plaintiff had judgment. Defendant brings error.

The principal question is that the court erred in refusing to direct a verdict for defendant on the ground that the driver of plaintiff's automobile was guilty of contributory negligence as a matter of law.

The highway runs east and west. Defendant's tracks are double, running northeast and southwest. On a bright summer day the automobile, with top up but without curtains, approached the crossing from the east. The view to the southwest was obstructed by poles, fences, trees, and shrubbery, up to a point 18 feet east of the east rail of the northerly bound track, from which point to the track there was a clear view of the track to the southwest, a distance of at least 300 feet. When the driver's view became unobstructed at such point, the front end of the automobile was 8 feet into the safety zone and 10 feet from the rail. The driver was "perfectly familiar with the conditions surrounding this crossing." She testified:

"You have to get up to within 18 feet of the track before it is unobstructed. As I was going up there on this occasion I knew of this obstructed view looking to the south. When I got up where I could get a view of it I was stopping to see if I could see a train. I first saw this train coming when the engine was just

at the cattle guard, a distance of 147 feet from the crossing where it struck us.   I was about 10 feet back from the railroad track when I first saw it coming.   I mean the front end of the automobile was back 10 feet.   I was looking both ways, east and west.   I looked just as I stopped because I saw the train the moment they whistled.   When I first got an unobstructed view, the moment I could get an unobstructed view to my left, I was looking west, the way the train was coming.   I started to stop the car when I saw it coming. * * * I knew how necessary it was to stop before I got on the track. * * *

"It was my intention to stop my car before I went upon this track regardless of whether there was a train coming or not.   I did not know the exact measurement I had in which to make observation.   I knew of that distance.   I knew that exact location, and that I had a distance of 18 feet at the crest of the grade to stop and observe an oncoming train. * * * My view was obstructed so I could not get a good view until I got upon this crest.   As soon as I got there then I could see.   It had been my intention to stop within this 18-foot space.   That had been my intention when I was on the lower level.   Before I got to the grade I intended to stop before I got on the track."

She drove into the safety zone at the rate of about 9 or 10 miles an hour.   She had one hand on the steering wheel, one on the gear shift.   She testified:

"I put my left foot on the clutch, the other foot on the brake.   I did that when I first saw the train. While going this ten feet I was attempting to stop the car.   I was not so excited there but what I was doing everything I could to stop the car.   The oncoming train seemed to me to reach me so quickly I didn't have a second's time, it was almost a head-on collision. The minute I saw them they were so close to us.   I had the service brake on from the moment I saw the train, both the clutch and brake.   I stepped on it, shoved it clear to the floor of the car, stepped just as hard as I could to stop it.   I did that the moment I saw the train."

She also testified of attempting to reverse, of stalling and of attempting to start the motor.   The automobile stopped on the track.   The driver and another occupant jumped before the impact.   There was some testimony that neither the whistle nor the bell of the locomotive was sounded on approaching the crossing.  After seeing the oncoming train, the driver used her best efforts to stop the automobile, did all that could reasonably have been done.   She failed because she had driven into the safety zone at such a speed that she could not stop the automobile in a place of safety.   With the driver's intimate knowledge of conditions, of the obstructed view, of the danger, of the point of first clear view, of the small zone of safety, we think that driving into such zone at the stated rate of speed, when, at the instant of first clear view, the front end of the automobile would be approximately 10 feet from the first rail of the track, was negligence as a matter of law.   See *Donlin* v. *Railway*, 198 Mich. 327; *Sanford* v. *Railway Co.*, 190 Mich. 390; *Hardy* v. *Railway Co.*, 208 Mich. 622; *Brady* v. *Railroad Co.*, 81 Mich. 616; *Shufelt* v. *Railroad Co.*, 96 Mich. 327; *Colborne* v. *Railway*, 177 Mich. 139; *Lamb* v. *Railway Co.*, 221 Mich. 273; *Molby* v. *Railway*, 221 Mich. 419.

Judgment reversed, without a new trial and with costs to defendant.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.