SHEETS *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—CROSSING ACCIDENT—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—DIRECTED VERDICT.

In an action by a truck driver against a railroad company for damages caused to plaintiff by a collision between his truck and defendant's train at a crossing, testimony that notwithstanding plaintiff had an intimate knowledge of the conditions and dangers attending said crossing, he drove within 20 feet of it without stopping and at such rate of speed that, on seeing the train 500 feet away, he was unable to stop his truck and avoid the danger, although it was in first-class condition and he an experienced driver, *held*, to justify a directed verdict on the ground of contributory negligence.

Error to Ingham; Collingwood (Charles B.), J. Submitted June 6, 1923. (Docket No. 49.) Decided October 1, 1923.

As to care required of driver of automobile at railroad crossings, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

On question of speed of automobile as negligence see notes in 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 51 L. R. A. (N. S.) 993.

Case by William M. Sheets against the Michigan Central Railroad Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Samuel H. Rhoads*, for appellant.

*Samuel H. Kelley*, for appellee.

STEERE, J.   On December 10, 1921, plaintiff and a motor truck he was driving sustained injuries in a highway crossing accident on defendant's line at a diagonal crossing near a place called "Williams' pit," about three miles south of the city of Lansing. Charging the accident resulted from defendant's negligence in failing to give the required crossing signals, plaintiff brought this action to recover damages for the injuries so sustained.   Upon trial of the cause a verdict was directed for defendant on the ground that plaintiff's evidence showed him guilty of contributory negligence as a matter of law, precluding recovery.

Williams' pit is located some 200 feet east of defendant's track on a hill described as part of a ridge called the "Hog's Back."   Defendant's road coming from the south skirts the hill on the west with a sidecut at its foot and just north of the hill is crossed at an acute northeast and southwest angle by a north and south highway which lies east of the railroad to the north and west of it to the south.   A road or driveway leads down the hill from the gravel pit to the crossing in an irregular course somewhat in the form of a letter S, starting southwest from the pit and winding to the northwest and then on down the hill at an angle, passing through a gate in the right of way fence east of the track and from there gradually curving on the railroad right of way and the highway to the crossing.   The distance between the gate in the right of way fence and the east rail of

defendant's track is stated by plaintiff to be 60 feet. A small building or shed stands outside of the right of way fence, estimated to be 60 or 70 feet south-easterly from the crossing, which to the extent of its width obscures the view south on the railroad track while passing it on the road down from the pit. The view south along defendant's track from the gravel pit road is obstructed by the contour of the hill until near its foot, when there is an open view until the shed cuts it off, and a clear view again after passing the shed.

Plaintiff was employed in hauling gravel with his truck from the pit down the driveway to the highway and over the crossing to a place of delivery beyond, and was familiar with conditions involved. On the day of the accident he left the pit shortly after the noon hour, going with a load of gravel down the drive-way to the crossing, observing, as he relates, the law of safety to "stop, look and listen," but unfortunately in reverse order, stopping, after he had listened and looked, so close to defendant's east rail that a swiftly approaching train from the south struck the right-hand wheel of his truck with disastrous results.

No evidence was offered by the defense, a motion being made in its behalf for a directed verdict on the ground that plaintiff's testimony showed him guilty of contributory negligence. He testified that his truck was in "first-class" running condition, that he was driving 6 or 8 miles an hour and was struck by the noon passenger train going north at a speed he esti-mated at 60 or 70 miles an hour; that he first saw it when he was 20 feet from the track and the train between 500 and 600 feet from the crossing, when he immediately made every effort to stop, and was stopped at the time of the collision, which occurred "about a second, possibly more" from the time he first observed the train approaching. Interrogated as to

the distance he could see down the track in connection with some of the circumstances of the accident, he answered in part as follows:

"*Q.* Suppose you stopped at the gate?

"*A.* Well, right at the gate or a little bit as you were passing through it, right there about 500 feet. That would be at the gate, after I had gone past the building. And from that point as I approached the track I could still see further.

"*Q.* You must be beyond the shed or through the gate before you can see down the track to a point beyond the 450 feet that you stated you could observe before you got to the shed?

"*A.* You must. * * *

"*Q.* Did you listen for a train during the entire length of your travel from the pit until the accident?

"*A.* I certainly did.

"*Q.* When did you first hear or know of the approach of a train to the crossing?

"*A.* Well, I think that I was about 20 or possibly —20 feet possibly from the track. That was a point after I had passed the shed and through the gate.

"*Q.* And how far was the train from the crossing when you saw it or discovered it?

"*A.* Well, I should say about 500 feet, possibly a little bit farther, possibly 600 feet, between five and six hundred feet. * * *

"*Q.* How fast were you going when you came down the hill?

"*A.* Well, I have no way of knowing the exact rate of speed any more than judging from what I am used to driving cars where I had driven with a speedometer, but I would judge somewhere between 6 and 7 miles an hour. Not over 8 miles an hour. I have driven a car 8 years, since 1915. * * *

"*Q.* When the train was approaching the crossing when you saw it, had the alarm whistle sounded, short blasts of the whistle sounded?

"*A.* Yes.

"*Q.* How long would you say after the short blasts of the whistle until the collision?

"*A.* About a second, a second and a half. * * *

"*Q.* Were you stopped or were you going at the time of the collision?

"*A.* Stopped. * * *

"*Q.* How fast would you say the train was going?

"*A.* 60 or 70 miles an hour.

"*Q.* And how long a time would you say elapsed after you first observed the train approaching until the collision?

"*A.* About a second, possibly more. * * *

"*Q.* When you first observed the train approaching the crossing, how far would you say the front part of your truck was then from the rail?

"*A.* About, probably, 20 feet, may be not quite."

A mathematical test of plaintiff's repeated statements as to time, rate of speed and distance puts the speed of the train beyond the possible unless he was farther from the track than 20 feet. But it is shown both by his own testimony and others that after passing through the gate he could see at least 450 feet down the track with an increasing distance as he approached it. There was an up grade in the highway as it approached the railroad track which he estimates as about 6 inches in a distance of 20 or 25 feet from the track. He had an intimate knowledge of the conditions and dangers attending that crossing, yet drove within 20 feet of it without stopping, and at such speed that on seeing the train 500 feet away he was unable to stop his truck in time to avoid the danger although it was in first-class condition and he a driver of 8 years' experience.

The undisputed facts in this case bring it fairly within the rulings of this court in the recent case of *Britten* v. *Railway Co, ante,* 91, and cases there cited.

The judgment will stand affirmed.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.