PHINNEY *v.* DETROIT UNITED RAILWAY CO.

1. APPEAL AND ERROR—HARMLESS ERROR.
   Rejection of testimony by plaintiff's witnesses was not prejudicial error, where the proof sought to be introduced thereby was later effectively elicited from defendant's witnesses.[1]

2. EVIDENCE—ADMISSIBILITY—MOTOR VEHICLES—RAILROADS.
   In an action for the death of plaintiff's decedent, who was killed at a crossing in a collision between the automobile in which she was a passenger and defendant's interurban electric car, testimony as to what the motorman said concerning the accident about ten minutes after the collision was properly excluded, where, in the meantime, he had talked with his superiors over the telephone.[2]

3. SAME—SPONTANEOUS STATEMENTS—RES GESTÆ.
   Spontaneous statements, made at the time of the accident, or so closely connected with it as to be evoked or prompted by it, are admissible as part of the *res gestæ*.[3]

4. SAME—OPINION EVIDENCE—ADMISSIBILITY.
   Testimony by a conductor, who had never acted as a motorman, as to what would be the proper thing to do to stop an electric car as quickly as possible in case of an emergency was properly rejected.[4]

5. SAME.
   Whether the motorman in charge of the car at the time of the accident failed to perform his duty in attempting to stop his car when the collision seemed imminent may be tested only by the judgment of other motormen or men having special knowledge of the mechanism provided for stopping and the most efficient manner of applying it to secure the desired result.[5]

6. SAME — REPUTATION OF MOTORMAN FOR RECKLESSNESS INADMISSIBLE.
   Testimony by the conductor and other employees of de-

---

[1]Appeal and Error, 4 C. J. § 2994; [2]Evidence, 22 C. J. § 545; [3]Id., 22 C. J. § 549; [4]Id., 22 C. J. § 604; [5]Street Railroads, 36 Cyc. p. 1588 (Anno).
On duty of driver of automobile as to stopping, looking, and listening, see note in 46 L. R. A. (N. S.) 702.

fendant that the motorman in charge of the car had the reputation of being reckless was properly excluded, since the jury were concerned only with the manner in which the car was driven at the time of the accident in question, and the effort made to stop it.[6]

7. Trial — Negligence — Imputable Negligence — Contributory Negligence—Instructions.

An instruction that the negligence of the driver of the automobile was imputable to decedent, and that if he was guilty of any negligence plaintiff could not recover, was not reversible error, although unaccompanied by the necessary qualification that it must be found that such negligence contributed to the injury, where, both before and after said instruction was given, the jury were properly instructed on the question of the contributory negligence of decedent.[7]

8. Railroads—Crossing Accident—Instructions—Duty to Stop, Look and Listen.

In instructing the jury as to the duty of a person about to cross a railroad track to look and listen, and, if need be, stop to ascertain the near approach of a car thereon, an instruction that "if the view is unobstructed and the pedestrian or driver of the vehicle takes this precaution, there is not much opportunity for him to be injured," was not open to objection on the ground that it was not applicable because in the instant case the view was obstructed, since it but stated the general rule, and was followed by a specific reference to the fact that the undisputed proof showed that the view of the driver when he reached a point at least 24 feet from the crossing was no longer obstructed.[8]

9. Same.

If the view of a railroad crossing is unobstructed for a considerable distance, an automobile driver approaching it may safely cross without stopping, but if his view is obstructed he must reduce his speed so that when he reaches a point where his view is unobstructed he can stop if necessary.[9]

10. Same.

A railway car has the right of way over a highway crossing.[10]

---

[6]Street Railroads, 36 Cyc. p. 1589; [7]Trial, 38 Cyc. p. 1779; [8]Id., 38 Cyc. p. 1786; [9]Railroads, 33 Cyc. p. 1011; p. 1019; [10]Id., 33. Cyc. p. 924.

11. TRIAL—ARGUMENT OF COUNSEL—PRESUMPTIONS.

 Although counsel have the right to argue that certain facts have not been established, it was not error for the court to instruct the jury not to be influenced by expressions of opinion by counsel as to matters of which they assume to have some knowledge not disclosed by the proofs.[11]

Error to Genesee; Barton (Joseph), J., presiding. Submitted June 4, 1925. (Docket No. 36.) Decided October 1, 1925.

Case by Daniel Phinney, administrator of the estate of Florence Phinney, deceased, against the Detroit United Railway Company for the alleged negligent killing of plaintiff's decedent. Judgment for defendant. Plaintiff brings error. Affirmed.

*C. A. Withey* and *Van Benschoten & Millard,* for appellant.

*William G. Fitzpatrick* (*William E. Tarsney,* of counsel), for appellee.

SHARPE, J. A highway, running north and south, crosses the line of defendant's railway almost at right angles at the village of Atlas, in Genesee county. On Sunday, February 20, 1921, about two o'clock in the afternoon, John H. Densmore was driving a Ford roadster, going north, on the highway. With him in the car were his wife, his child Odessa, and Florence Phinney, the wife of plaintiff. Defendant has a small station house at Atlas, located about 50 feet east of the highway. About 1,300 feet east of the crossing, defendant's track makes a long sweeping curve to the south. One of defendant's limited interurban cars, going west, not scheduled to stop at Atlas, collided with the roadster driven by Densmore at the

---

[11]Appeal and Error, 4 C. J. § 2710; Trial, 38 Cyc. p. 1486.
 232—Mich.—26.

crossing.    As a result of the collision, the three adults were killed, and the child was injured.

Plaintiff, as administrator of his wife's estate, brings this action to recover the loss sustained, due to her death.    The cause was submitted to the jury, who found for the defendant.    Plaintiff reviews the judgment entered by writ of error.    The assignments will be considered in the order grouped and discussed by counsel.

1. It appears that an electric alarm or signal bell had been installed by the defendant at this crossing. Negligence was predicated on the failure of defendant to keep and maintain this bell in repair and condition to ring when its car approached the crossing.    There was conflict in the testimony as to whether it did ring on the approach of the defendant's car.    One of plaintiff's witnesses was asked: "You may state whether or not the bell always rang as interurbans approached the crossing?" and another: "Tell us whether that bell sometimes rang and sometimes not when a car passed  *  *  *  if you had observed?" Defendant's objections to these questions were sustained.    Later, plaintiff's counsel submitted an offer to prove that the bell was out of repair at the time of the accident, and had been for a long time previous thereto, "so that sometimes when a car approached the crossing it would ring and other times it would not ring; that sometimes it would ring when there was no car approaching."

During the discussion following the offer, defendant's counsel said:

"And in so far as this particular bell is concerned, I haven't any doubt that on many occasions it did fail to operate and was immediately put back in order."

The court ruled that plaintiff might—

"show that on that occasion and for a period of time sufficient to bring it to the attention of the officials, or ticket agent particularly, I think you ought to be

allowed to show that if you can do it, but I won't allow you to show the irregular ringing covering a long period of time and that it was habitually out of repair and all that."

A witness was thereupon recalled, who testified positively that the bell did not ring either at 10:30 or 12:30 on the day of the accident, when limited cars went through.

On the cross-examination of defendant's witness Thompson, the station agent at Atlas, he was asked:

"As a matter of fact you know, do you not, Mr. Thompson, that this crossing bell was very often out of repair so that it did not ring?"

and answered, without objection:

"It was occasionally, it had been out of repair occasionally all the time up to the time of this accident to a certain extent."

Perry Gale, one of defendant's witnesses, who lived near the crossing, was asked on cross-examination:

"You also know, do you not, that for some time before and right up to the day of this collision the crossing bell did not ring?"

and answered, without objection:

"A great many times it did not, that was true as long as I have known it; I don't know whether it rang all that day up to the time of the crash or not."

In view of the fact that the proof plaintiff sought to introduce was afterwards placed before the jury, and in a manner quite as effective as if it had been elicited from his own witnesses, it cannot be said that there was prejudicial error in the rulings made.

2. Error is assigned on the refusal of the court to permit a witness to testify to what Earl Hinkley, defendant's motorman, said concerning the accident about ten minutes after the collision. In the meantime, he had entered the waiting room and talked with his superior officers over the telephone. The reasons

for excluding such evidence were pointed out by Mr. Justice STONE in *Hyatt* v. *Leonard Storage Co.,* 196 Mich. 337. The authorities are there reviewed and discussed at length. Spontaneous statements, made at the time of the accident, or so closely connected with it as to be evoked or prompted by it, are admissible as part of the *res gestæ.* Counsel discuss this assignment at length, and cite many authorities in support of their contention. We think the rule of determination as to the admissibility of such evidence as laid down in the *Hyatt Case* should be adhered to. Under it this proof was not admissible. See, also, *Link* v. *Fahey,* 200 Mich. 308.

3. Edward Elford, who was in the employ of the defendant as a conductor on an interurban car at the time of the accident, and had been so employed for several years prior thereto, was asked "what would be the proper thing to do to stop it as quickly as possible in case of an emergency." An objection to the question asked was sustained. Error is assigned thereon. Hinkley, called for cross-examination, had testified that he first saw the automobile when his car was 800 or 900 feet from the crossing; that the station house afterwards obstructed his view, and he next saw it when it was about 50 feet from the crossing and his car about 250 or 300 feet therefrom; that he made no special effort to stop until within 100 feet from the crossing, and that he then applied the brakes with full force; that he did "not sound the foot gong, or reverse the motor, nor apply the sand on the wheels;" that he had theretofore sounded the usual crossing whistle; that he considered the application of the air (emergency) brake the safer way to quickly stop his car; that at that time he was going from 35 to 40 miles an hour. He admitted that on a former trial of this case he had testified that he had not applied the brakes until his car was within

35 or 40 feet from the crossing, and, on being asked, "That is right, is it?" answered, "Yes, sir." Clarence White, a witness for plaintiff, who was formerly a motorman in the employ of the defendant, testified that in case of an emergency the best thing to do in order to stop quickly is to "reverse the car and use the sand on the rails." Elford had never acted as a motorman. He testified that he had "seen motormen do different things in stopping quick." Hinkley was called upon to do that which in his judgment, based upon his experience and any instructions which might have been given him, would be the most effective to stop his car when the collision seemed imminent. Whether he at that time neglected or failed to perform this duty, in our opinion, could be tested only by the judgment of other motormen or men having special knowledge of the mechanism provided for stopping cars and the most efficient manner of applying it to secure the desired result.

4. Error is assigned on the refusal of the court to permit plaintiff's counsel to show by Elford and other employees of the defendant that Hinkley had the reputation of being a reckless motorman. The authorities cited by counsel in support of his contention that this evidence was admissible are cases in which employees were injured through the negligence of a fellow-servant. We think they have no application to the facts here presented. The jury were concerned only with the manner in which Hinkley drove his car and the effort he made to stop it at the time of the collision. *Williams* v. *Edmunds*, 75 Mich. 92, 96; *Boick* v. *Bissell*, 80 Mich. 260; *Langworthy* v. *Green Township*, 88 Mich. 207, 217.

5. Error is assigned upon several parts of the charge. It is urged that the instructions given were in the language of requests preferred by defendant, and were not applicable to the facts testified to. The jury were instructed that the negligence of the driver

of the automobile was imputable to plaintiff's decedent, and that if he was guilty of any negligence the plaintiff could not recover.   It is said that this instruction omitted the necessary qualification that it must be found that such negligence "contributed to the collision and the injury."   Prior thereto the court had said that in order for plaintiff to recover it must be shown that "the injury was caused by the negligence of the defendant company, and that her own negligence did not contribute thereto."   In the closing language hereafter quoted, it is also so stated.   We are impressed that a jury of ordinary intelligence must have understood from the charge taken as a whole that the negligence of Densmore, to operate as a bar to plaintiff's recovery, must have contributed to the injury sustained by the deceased.

In instructing the jury as to the duty of a person about to cross a railroad track to look and listen and, if need be, stop to ascertain the near approach of a car thereon, the court said:

"If the view is unobstructed and the pedestrian or driver of the vehicle takes this precaution, there is not much opportunity for him to be injured."

It is urged that the proofs here show that the view was obstructed, and for that reason this instruction should not have been given.   This utterance of the court but stated the general rule.   It was followed by a specific reference to the fact that the undisputed proof showed that the view of the driver, when he reached a point at least 24 feet from the crossing, was no longer obstructed by the station building, and the jury could but have understood that what was said to them in this respect applied to the duty of the driver after he had reached that point.   They were also instructed as to the duty of the defendant to maintain its crossing signal in good repair, and the right of the driver to rely thereon.

The duty of the driver of an automobile when approaching a railroad crossing has been pointed out in many of our recent cases.    *Molby* v. *Railway*, 221 Mich. 419; *Sheets* v. *Railroad Co.*, 224 Mich. 588; *Britten* v. *Railway Co.*, 224 Mich. 91; *Eisele* v. *Railway Co.*, 224 Mich. 236; *Downey* v. *Railway Co.*, 230 Mich. 243.    The safety of persons riding in the cars, as well as of those in the automobile, demands that he exercise reasonable care to avoid a collision.    If his view of the crossing be unobstructed for a considerable distance each way, and a careful observation discloses that a car or train is not approaching, he may safely proceed to cross without stopping.    But, if his view be obstructed from any cause, his duty is plain.    He must reduce his speed in order that when he reaches the point at which he can obtain a view of the track, if a car is seen to be approaching the crossing, he may be able to stop before passing thereon.    The car has the right of way.    The traveling public seems to demand that it shall travel at considerable speed and, as before stated, the safety of its passengers, as well as those in the automobile, imperatively demands that drivers shall be watchful and vigilant at such crossings; look at a point where they may see, and have their automobiles under such control that they may stop if need be to avoid a collision.    The charge, taken as a whole, we think fairly instructed the jury as to the duty thus imposed on the driver, and is not subject to the criticism indulged in by counsel.    It is apparent to us from a reading of the entire record that the jury must have found that Densmore drove his automobile in front of the approaching car without the exercise of that care required of him under the circumstances.

In the closing paragraph, the court said:

"I charge you that you should not be influenced in this case by expressions of counsel whereby they express an opinion as to what has been proven or what

has been disproven, and particularly you should not be influenced by expression of counsel for plaintiff. That should have no weight with you when he expresses his opinion that Hinkley did not reverse the motor and put on the air was not the best thing to do under the circumstances. That is the expression of an opinion. It is for you gentlemen to determine from all the testimony in the case whether or not the motorman did his utmost and applied such appliances as he should have done. The point I make is, you should not be influenced by expression of counsel one way or the other. Neither should you be influenced by counsel for defendant as to what opinion he should present as to what credence is to be given to any particular part of the testimony. That is your duty as jurors. You have seen the witnesses in the chair and it is for you to judge of their candor, the probability, or improbability of the truthfulness of the stories, their interest in the outcome of the case, and from all evidence in the case adduce the plain fact who was to blame. Has the plaintiff proven his case by the preponderance of the evidence? Has he proven in the manner I have defined that the defendant company was guilty of negligence and that he, or his decedent did not contribute thereto? If he has so sustained, by the proofs, his case, it would be your duty to find in his favor under the instruction of the court such a sum as would compensate the estate of the deceased, no more, no less."

It is urged that counsel have the right to insist in their argument that certain facts have not been established by the proofs. That is undoubtedly true. We have not before us the argument of counsel, and are not apprised of the opinions expressed, to which the court alluded. We can but presume that they were as to matters of which counsel assumed to have some knowledge not disclosed by the proofs.

Finding no reversible error, the judgment is affirmed.

MCDONALD, C. J., and CLARK, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.