Clytie RING,
Personal Representative of the Estate of
Monte Ring, deceased.
*Appellant,*

*v.*

Wayne R. ROGERS, M.D.,
*Respondent,*

*and*

Joseph A. INTILE, Jr., M.D.,
*Defendant.*

(9211-07885; CA A82777)

927 P2d 152

Armstrong, J., filed dissenting opinion.

Kathryn H. Clarke argued the cause and filed the briefs for appellant.

Janet M. Schroer argued the cause for respondent. With her on the brief were Marjorie A. Speirs and Hoffman, Hart & Wagner.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Plaintiff appeals from a judgment in favor of defendant Rogers in this medical malpractice action. She makes multiple assignments of errors. We affirm.

The decedent was admitted to Good Samaritan Hospital in Portland after suffering a myocardial infarction. Rogers, a cardiologist, was the decedent's primary physician while he was treated at the hospital and treated him with medication. After 12 days at Good Samaritan, the decedent was discharged with Rogers' approval. Eleven days later, he died. Plaintiff alleges, in part, that Rogers was negligent in the care and treatment of the decedent because he failed to recommend coronary bypass surgery as a form of treatment. After a trial, the jury returned a general verdict for Rogers.[1] Plaintiff appeals, making several assignments of error.

■   In her first assignment of error, plaintiff contends that the trial court erred in admitting the following testimony from an expert witness testifying for Rogers.

"Q.   Have you found [Rogers] to be overall a passive person when it comes to placing someone who needs bypass surgery?

"A.   Dr. Rogers is considered an aggressive cardiologist who will intervene whenever necessary and early, whether it's recommending surgery or doing balloon angioplasty-type treatment."

Plaintiff argues that the testimony is inadmissible evidence of Rogers' character under OEC 404(2). Rogers counters that the evidence was not character evidence, and even if it was improperly admitted, the error was not prejudicial.

OEC 404(2) provides that "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion." "Character" is not defined in the Oregon Evidence Code or in the legislative commentary to the code. In *State v. Marshall*, 312 Or 367, 371-72, 823 P2d 961 (1991), the court stated:

---

[1] Before trial, defendant Intile was dismissed as a party.

" ' "Character" generally indicates "a person's disposition or propensity towards certain behavior, such as honesty," * * * or "a person's tendency to act in a certain way in all varying situations of life." '

"Professor McCormick has explained that '[c]haracter is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness.' McCormick, Evidence 574, § 195 (3d ed 1984). For example, McCormick explains that when we speak of a character for carefulness, we think of the person's tendency to act prudently in all the varying situations of life—in business, at home, in handling automobiles, and in walking across the street. *See Charmley v. Lewis*, 302 Or 324, 327-28, 729 P2d 567 (1986) (distinguishing character from habit and quoting McCormick's definition of character with approval)." (Footnote omitted.)

In light of the above definition of "character," the question of whether the testimony in issue can be properly characterized as character evidence is a close one. First, the testimony is not about Rogers' disposition, propensity or tendencies to act in a certain way "in all varying situations of life." In that sense, the evidence differs from evidence about general traits such as truthfulness, honesty, temperance or peacefulness and does not as readily fall into the classification of character evidence as do more general references. Moreover, the witness did not testify that Rogers was reputed to be a "careful" cardiologist, testimony that would imply that because he was generally a prudent practitioner, he must not have been guilty of negligence on this occasion. Rather, the testimony is about Rogers' reputation for aggressiveness in a specific endeavor.

That aspect of the testimony results in more than one inference that can be drawn from the evidence. It could, as the dissent asserts, lead to the inference that because plaintiff is reputed to be an "aggressive" cardiologist, his treatment on this occasion was consistent with that reputation. *See, e.g., Phinney v. Detroit United Railway Co.*, 232 Mich 399, 205 NW 124 (1925) (testimony of conductor that motorman had a reputation for recklessness was inadmissible character evidence). On the other hand, the testimony in

the context of the evidence in the entire trial could be understood to mean something else. In this medical malpractice case, there was evidence of varying philosophical approaches to medicine. The record indicates that there exists in the medical community an aggressive approach and a conservative approach to the treatment of heart disease. Arguably, performance under either or both standards could meet the community standard of care. In other words, a patient with certain symptoms and conditions may be a candidate for surgery under the aggressive school of thought and not a candidate for surgery under the conservative school of thought. Thus, in those circumstances, a cardiologist may not be held to have violated his duty of care because he followed a certain recognized philosophy or methodology in the treatment of heart disease. In the context of the entire record in this case, the jury could have understood the testimony in question to refer to the particular school of thought embraced by Rogers.

It is for all of those reasons and for the reasons set forth below, that even if the testimony is considered to be inadmissible character evidence, its admission did not constitute prejudicial error. Evidentiary error is not presumed to be prejudicial. OEC 103(1). The test is whether the erroneously admitted evidence had some likelihood of affecting the result. *State v. Isom*, 313 Or 391, 403, 837 P2d 491 (1992). The trial lasted eight days, and the transcript is in excess of 1,300 pages. Neither party elicited other testimony that was derivative of the disputed testimony, nor was the testimony referred to in closing arguments. Both parties offered multiple expert witnesses who rendered opinions about whether Rogers' treatment met the community standard of care. Plaintiff's witness testified that the decedent's condition required immediate surgical intervention and that, if the source of his chest pain was not identifiable, more definitive tests were required. Defendant and his expert witnesses responded that the type of pain that the decedent complained of did not constitute an emergency situation and could be controlled by medication. They also testified that, because the decedent was overweight, had a history of diabetes, alcoholism, congestive heart failure and had poor target heart vessels, those factors made him an inappropriate candidate for

surgery. In the light of all of these circumstances, we conclude that the disputed evidence had little or no likelihood of affecting the jury's deliberations.

■    Plaintiff's next assignment of error is that the trial court erred in denying her request to give Uniform Civil Jury Instruction 30.10 (now renumbered as 70.08). In substance, the instruction would have told the jury that, even if the decedent had a condition of the body that predisposed him to injury, Rogers would be liable for all injury and damage caused by his negligence. However, the trial court did give Uniform Civil Instruction 15.02 (now 23.02), which told the jury that it did not need to find that Rogers' conduct was the only cause of the decedent's injury in order to hold him liable. It is not error when a trial court refuses to give a duplicative jury instruction.

■    Plaintiff's final assignment of error raises a similar issue and result. Plaintiff argues, "The court erred in denying plaintiff's request to instruct the jury that negligence of Dr. Intile subsequent to conduct of Dr. Rogers would not exonerate Dr. Rogers from liability."[2] As Rogers correctly points out, Uniform Jury Instruction 15.02 gives the jury substantially the same information.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority holds that even if the testimony in dispute is inadmissible character evidence, a position that it does not endorse, the admission of that evidence was not prejudicial error. Because I believe that the testimony was inadmissible character evidence that had some likelihood of affecting the trial, I dissent.

The majority terms the issue whether the disputed testimony is character evidence "a close one" because it holds that the jury could have drawn more than one inference from the testimony. 144 Or App at 512. It reaches that conclusion

---

[2] After the decedent was treated and released at Good Samaritan Hospital, he was admitted to Willamette Valley Hospital where he was treated by Dr. Intile.

because the term "aggressive" was used in at least two different ways at trial. Plaintiff's experts testified that the standard of care in this case required defendant to take aggressive action in treating Ring. They stated that a reasonable doctor faced with Ring's medical condition either had to order surgery or to conduct more tests to rule out surgery as an option. If the doctor failed to follow that aggressive approach, he was negligent.[1] Defendant countered that a reasonable doctor would have determined that recommending surgery, or even conducting further diagnostic tests, was inappropriate; in the alternative, he argued that Ring's condition presented at least an ambiguous problem and that, depending on one's medical philosophy, the approaches to treating Ring advanced by both parties were reasonable. As the majority explains, in that context, "aggressive" was used to describe one philosophical approach to medicine; an aggressive cardiologist was described as one who, when in doubt about a patient's condition, would recommend surgery. 144 Or App at 512-13.

Finally, the term "aggressive" was used in the testimony at issue. Because of the various ways the word was used throughout the trial, the majority concludes that it is unclear how the jury would have understood that testimony. I disagree. There is no indication in the record that defendant embraced the "aggressive" school of thought in his practice of cardiology. In fact, the record indicates that defendant argued that he took a "conservative" approach in treating Ring and that that decision was reasonable. Thus, when the witness, a physician who worked with defendant, testified that defendant "is considered an aggressive cardiologist who will intervene whenever necessary and early" there was no reason for the jury to interpret that testimony to be a statement about defendant's approach to cardiology.[2] A more logical conclusion is that the jury would understand that

---

[1] The standard of care for a physician is "that degree of care, skill and diligence which is used by ordinarily careful physicians * * * in the same or similar circumstances in the community of the physician * * * or a similar community." ORS 677.095.

[2] In fact, the record indicates that defendant did not intend it to be interpreted that way. Outside the presence of the jury, in open court, defendant's attorney said he wanted to ask the witness about his observation about "a particular characteristic of Dr. Rogers."

testimony to mean that defendant was characteristically appropriately aggressive or non-negligent. The testimony equated him with someone who acts when necessary. A person with the opposite characteristic is not one who takes a conservative approach to cardiology but one who does not intervene when necessary, *i.e.*, one who is negligent.

The majority indicates that, if the witness had testified that defendant was a "careful" cardiologist, that testimony "would imply that because he was generally a prudent practitioner, he must not have been guilty of negligence on this occasion." 144 Or App 512. Read in its entirety, the testimony at issue here is synonymous with testimony that Rogers was a "careful" cardiologist. Just as testimony that a person is generally careful can lead a factfinder improperly to infer that that person was careful in a specific instance, the testimony's only purpose could have been to propose that, because defendant usually was appropriately aggressive, he was probably appropriately aggressive in this instance. That is precisely the type of evidence meant to be excluded by OEC 404(2), and it should not have been admitted.

In light of the nature of that character evidence, I would reverse and remand. I think that there is some likelihood that the testimony affected the jury's decision in this case. The central issue was whether defendant's care of Ring met the standard of care for a cardiologist in Portland. In making that determination, the jury had to reach a conclusion about Ring's medical condition and how a reasonable doctor in Portland would treat that condition. Both parties presented extensive evidence on that subject. Much of the testimony was extremely complex, involving evaluation of medical charts and films. The inadmissible character evidence also related to whether defendant's treatment of Ring met the standard of care. It was clear, simple, on point and admitted into evidence for consideration by the jury. If the jury was closely divided as to the treatment Ring's medical condition reasonably demanded, I think there is some likelihood that the jury would consider significant the fact that a doctor who had worked with defendant for "20 odd years" and had conducted tests on Ring for defendant's use had testified that defendant was "considered an aggressive cardiologist who will intervene whenever necessary and early." Because

that evidence should not have been admitted and it had some likelihood of affecting the outcome of the trial, I would reverse and remand.

I concur with the majority's disposition of plaintiff's other assignments of error.