JESSIE WESLER, AS ADMINISTRATRIX OF THE ESTATE OF PETER WESLER, DECEASED, v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

June 27, 1919.

No. 21,238.

**Death by wrongful act — contributory negligence.**

In an action for death by wrongful act, the trial court, at the close

[1] Reported in 173 N. W. 565.

of plaintiff's case, directed the jury to return a verdict for the defendant, upon the ground that it conclusively appeared that plaintiff's intestate was guilty of contributory negligence. Evidence examined and *held* to justify the instruction.

Action in the district court for St. Louis county to recover $15,970 for the death of plaintiff's intestate. The answer alleged that deceased caused his own death through negligence and set up section 1809, subdivision 6, of the 1915 statutes of Wisconsin. The case was tried before Dancer, J., who when plaintiff rested granted defendant's motion for a directed verdict. From an order denying her motion for a new trial, plaintiff appealed. Affirmed.

*W. P. Crawford, W. A. Watts* and *Benj. M. Goldberg,* for appellant.

*Abbott, MacPherran & Gilbert,* for respondent.

QUINN, J.

Plaintiff's intestate was driving an automobile south along a paved macadam highway leading from the city of Superior to Solon Springs in the state of Wisconsin. Defendant's line of railroad extends from Eau Claire to the city of Duluth, crossing the highway at about right angles. As Mr. Peter Wesler, the deceased, approached the crossing, he brought his automobile to an almost full stop at a point within a few feet of the track, then shot ahead as if in an endeavor to cross it ahead of a rapidly approaching locomotive. The locomotive struck the automobile, carrying it several hundred feet to the west and killing the occupant almost instantly. This action was brought to recover for his death. At the close of plaintiff's testimony the court directed a verdict in favor of the defendant because of the contributory negligence shown on the part of deceased. Whether the deceased was guilty of more than slight negligence is the sole question here for consideration.

It appears that the highway referred to is the main traveled road between Duluth, Superior and Solon Springs; that it is paved with macadam to the width of about 12 or 14 feet; that, for about three miles before reaching the railroad going south, there is a heavy up-grade, which materially increases from the north side of the right of way to the track. The railroad track has a descending grade from the east to the west at that point. At about 10 o'clock in the forenoon of the day in question,

Frank J. Kenyon was driving a Maxwell car on this highway going south toward the crossing referred to. Gust Holm and J. K. Smith were riding in the rear seat of his car. These three men were the only persons who saw the accident who testified upon the trial.

Mr. Kenyon overtook Wesler about 80 rods north of the railroad crossing. Wesler was driving slowly and Kenyon undertook to pass him, but was prevented, and he trailed along four or five rods behind until they approached the railroad. As Wesler approached the crossing he slowed down his car, and when within a few feet of the track brought it to an almost full stop. His car then suddenly spurted ahead and the locomotive, backing down from the east at a speed of from 40 to 50 miles per hour, struck Wesler's car squarely in the side, carrying it several hundred feet to the west and killing the occupant almost instantly.

Mr. Kenyon testified in substance that he lived at Superior and was familiar with the locality of the railroad crossing; that as he approached the right of way he heard a rumbling noise and knew a train was coming; that the wind was from the southwest and that he could not tell from what direction the train was approaching; that he saw Wesler slow down his car to an almost full stop when within about six or seven feet of the track; that he then saw the car shoot ahead, and the tender of the locomotive struck it squarely in the side; that the witness stopped his car near the edge of the right of way about 25 feet north of the track at about the same time that Wesler slowed down his car; that he then saw the locomotive approaching at a point about 10 or 15 rods east of the crossing; that on account of the view being obstructed by trees one could not see down the track until within about 25 feet of the crossing; that about 80 rods east of the crossing the track curved to the south so that the view was obstructed beyond that point; that he heard the train approach when he was about 100 to 150 feet north of the track, and that he did not hear the bell or whistle sound as the engine approached.

The testimony of the other two witnesses to the accident corroborated Kenyon. It is apparent that, from the point where the highway intersects the right of way, one sitting in an automobile could see a train coming from the east for a distance of at least 300 or 400 feet. Kenyon's car had reached this point at the time Wesler slowed down his car from a speed of about five miles per hour to what appeared to be an al-

most full stop to those who witnessed the affair.    Then the car shot ahead onto the track immediately in front of the locomotive.    Mr. Kenyon testified:

"A. I should not imagine he was going over five miles an hour.    He was going very slow until he took that just a little sudden spurt.

"Q. About where was the car at the time he gave it the spurt you speak of?

"A. Why, it looked to me not over five feet from the railroad.

"Q. You mean five feet from the rails?

"A. Yes, from the rails."

The witness Holm testified that there was a raise in the highway from the north line of the right of way to the railroad track of about five or six feet; that Wesler's car moved up that pitch slowly, and when within five or six feet of the track came nearly to a stop and then seemed to pick up speed again; that, as it was getting on the track, he, Holm, saw the engine about 100 feet away.    The conclusion of the trial court seems to be inevitable.

We have not overlooked section 1809 of the Wisconsin statutes for the year 1915, which was pleaded and admitted, and provides that "slight negligence is no bar to recovery for personal injuries."

Affirmed.