## BALTZ CAPRETZ v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

November 2, 1923.

No. 23,439.

**Defendant entitled to judgment.**
> The evidence considered and *held* such as to entitle defendant to judgment notwithstanding the verdict.

Action in the district court for Mower county to recover $2,500 damages for demolition of an auto truck. The case was tried be-

[1]Reported in 195 N. W. 531.

fore Meighen, J., who denied defendant's motions for a directed verdict, and a jury which returned a verdict for $1,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Briggs, Weyl & Briggs*, for appellant.

*Arthur W. Wright* and *Martin A. Nelson*, for respondent.

QUINN, J.

This is an action to recover for damages to an automobile truck, alleged to have been caused through the negligence of the defendant, its agents and servants. There was a verdict in favor of the plaintiff for $1,000. From an order denying its alternative motion for judgment or a new trial, defendant appealed.

Water street, in the city of Austin, is one of the main thoroughfares passing through the city from east to west. The defendant's line of railroad enters the city from the south, extends north across a number of streets, including Water street. It then veers to the northeast across Cedar river to the crossing on Ash street where the accident complained of occurred. The Hormel Packing Plant is east of the river and to the north of the defendant's railroad track. Ash street is the entrance way from the south to that plant. At that crossing on Ash street the railroad track is between 4 and 5 feet above the general level of the street. There is a track for vehicles extending in an easterly direction from the Hormel Plant buildings diagonally along the northerly side of defendant's right-of-way and parallel with the track to Ash street, where it turns a short curve south toward the crossing. It is about 37 feet from the north rail to the center of this curved track where it approaches Ash street. A vehicle coming around this curve would have to ascend a grade of between 4 to 5 feet on Ash street in order to make the crossing. The water and electric plant and coal sheds are about 1,300 feet to the southwest of the crossing, on the southerly side of the railroad track. The railroad bridge across the Cedar river is about 700 feet southwest of the crossing. It is 12 feet wide and the sides thereof are solid and about 6 feet in height. There are four

telegraph poles standing about the usual distance apart on the north side of the track between the bridge and the crossing.

Plaintiff was engaged in the transfer business in the city of Austin. He owned a two-ton truck which he used in his business. On May 26, 1922, Nick Schwartz was in charge of the truck, operating it as plaintiff's employe. Between 11 and 12 o'clock in the forenoon of that day he appeared at the Hormel Plant with a load of hay. Ben Orr and Christ Rosenbrook, employes of the Hormel Plant, helped him unload the hay and then jumped into the cab of the truck, Rosenbrock sitting on Orr's lap. Schwartz was at the wheel on the left side. The truck was equipped with an inclosed cab which had windows in the doors on each side and one in the back. Schwartz then drove the truck from the place where they had unloaded the hay eastward along the diagonal road to within about 15 feet of the turn onto Ash street. When he looked back through the window to see whether there was any locomotive or train coming, he saw none. At the same time he asked the men sitting at his side whether there was anything coming. They made no answer. Schwartz shifted the gear to make the curve and grade. When the front wheels of the truck reached the rails the locomotive was but 25 feet away and it struck the truck causing the damage complained of. It was then past 12 o'clock and there was little travel on the streets. Schwartz testified that he looked only the once for an approaching locomotive or train.

The serious question to be determined upon this appeal is whether the question of the driver's negligence was properly submitted to the jury, or whether the proof showed him to be guilty of contributory negligence, as a matter of law. Ash street extends due north and south. The railroad track crosses that street diagonally from the southwest to the northeast. The locomotive was approaching the crossing from the southwest. Nick Schwartz, driver of the truck, testified that he turned and looked through the window of the cab to see if there was a train approaching, and, at the same time, asked the men sitting by his side whether there was any danger from that direction. He also testified that, after he looked out of the window and started to make the curve, he shifted the gear from third to

second, so as to have power to make the turn and the grade to the track; that he did not hear any signals and did not look again for an approaching train; that it was about 35 feet from where he rounded the curve to the track; that, in approaching the track, his truck was moving at the rate of about 3 or 4 miles an hour; that he saw the locomotive at about the time it hit the truck, and that the next he knew was when he awoke in the hospital.

At the time Schwartz says he looked through the window to see whether a train was approaching, the truck was within 15 or 20 feet of the curve, moving in a northeasterly direction parallel with the track. At that time the locomotive was approaching from the southwest or immediately back of him. He then shifted his gear and made the curve onto Ash street, 35 feet north of the north rail. Had he turned his face but slightly to his right and looked up the track at any time while going this distance of 35 feet up-grade, he could not have avoided seeing the approaching locomotive. He testified that he did not see the locomotive until it was immediately upon him. Under these circumstances, we are compelled to hold that he was guilty of contributory negligence, as a matter of law. It is clear that, from the time he reached Ash street, his view was clear and unobstructed for at least 700 feet to the bridge. To say that he inquired from the persons sitting at his right in the cab, whether there was anything coming from that direction, does not excuse him from looking and listening after he turned south on Ash street toward the crossing. The defendant was entitled to judgment notwithstanding the verdict. It is so ordered.

Reversed.


Holt, J. (dissenting.)

In my opinion it was for the jury to say whether Schwartz looked at the proper time and place for approaching trains or took the precautions for his safety which the ordinarily prudent person would have taken.


Dibell, J. (dissenting)

I concur with Mr. Justice Holt.

As he was about to turn Schwartz looked through the back window of his truck. There was no train in sight. Thus far he was careful. Then he started to make the turn, which was considerably more acute than a right angle, at the same time shifting the gear to make the grade to the railroad track. He necessarily gave attention to the movement of his car and the possible approach of a train from his left. No train was due. He says, "When I turned I made the remark, 'Is there anything coming from that way?'" This remark was directed to the two men at his right. He received no answer. His view toward the switch engine coming from his right was obstructed by the presence of the men. They may have been negligent in not seeing the engine. That is not a decisive fact. The defendant is relieved of liability only in the event that Schwartz was negligent. Was he negligent as a matter of law in making the turn onto the railroad track, without a further look, relying on the two men at his right to exercise the caution which his question to them suggested? In my judgment no rule of law says that he was.