E. R. BAILEY AND ANOTHER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 29, 1926.

No. 25,049.

**Contributory negligence of chauffeur in collision at railway crossing.**
The circumstances of a crossing collision between an automobile and a passenger train *held* to show as a matter of law contributory negligence on the part of the chauffeur and his companion.

Railroads, 33 Cyc. p. 1093 n. 63.

Two actions in the district court for Pine county to recover for the death of plaintiffs' intestates. The cases were tried together before Searles, J., and a jury which returned a verdict in favor of plaintiff in each action. Defendant appealed from an order, Stolberg, J., denying its motions for judgment notwithstanding the verdicts or for a new trial. Reversed.

[1]Reported in 207 N. W. 26, 560.

*Fryberger, Fulton, Hoshour & Ziesmer* and *John E. Palmer,* for appellant.

*Samuel A. Anderson* and *P. A. Sandberg,* for respondent.

STONE, J.

Two actions for wrongful death, tried together with a verdict for plaintiff in each case. Defendant appeals from the order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

The two deceased, Leonard Le Roy Bailey and Stanley Ray La Forge, were riding in an open Ford truck when it was struck by defendant's passenger train at a highway crossing in Cloverton, Minnesota. Main street runs through the village east and west and defendant's main line north and south. They intersect at approximately right angles. North of the highway, with its south end approximately 200 feet therefrom, is defendant's two-story depot. It is on the east side of the main line. Between the depot and the rails is the platform, about 325 feet long. A bank, restaurant and store buildings on the north side of Main street obscure the view of the railroad until one approaching from the east is within 125 feet of the main line. For a space of some 60 feet after one passes westwardly of the store buildings there is a northerly view east of the depot. It is somewhat obscured by a dwelling and other smaller buildings, but when a point is reached 75 feet from the crossing there is a view of the railroad, from 600 to 1,200 feet or more north of the crossing, which is relatively unobscured. The depot then begins to cut off the view to the north. When the westbound traveler reaches a point 50 feet from the main line, he has a view to the north and west of the depot of about 300 feet up the main line. The length of the northward view increases of course as the crossing is approached and at 25 feet there is a clear view northward along the main line of from 450 to 500 feet. Main street is a well-traveled highway, graded and used to its full width of 80 feet. The crossing is planked to a width of 32 feet, the grading being tapered in on defendant's right of way so that the sides of

the highway meet the ends of the planking. Both street and railroad are nearly level for considerable distances both ways from the crossing.

The truck was owned by La Forge but driven by Bailey, it being stipualted that the negligence, if any, of the latter is to be imputed to the former. They were riding in the driver's seat and both were killed by the collision. A companion of theirs, Roy Falkenburg, was standing just behind the driver's seat and escaped by jumping. Falkenburg was the real chauffeur of the truck, but Bailey and La Forge attempted to perpetrate a joke upon him by taking the truck without his knowledge. In that attempt they started the machine on Main street and proceeded westwardly at a speed variously estimated at from six to ten miles an hour. They were about 100 feet from the main line when Falkenburg, who had discovered their purpose and overtaken them by running, jumped on the right hand running board. One of their companions, Schultz, was behind them in a touring car and says that when Falkenburg "jumped on the right running board" Bailey and Le Forge were "looking back and talking to see if he would really get on and not paying attention to where they were going." He also says that they proceeded without looking until they were within about "ten feet of the track."

The passenger train was defendant's flyer south bound from Duluth to the Twin Cities, running on a schedule time at 48 miles per hour. According to what appears to be a compelling preponderance of the testimony, the whistle signals for both station and crossing were sounded and the bell was rung. We assume however that there was a jury issue as to whether those signals fulfilled the measure of due care resting upon defendant. Certain it is that at a point fully 600 feet north of the crossing, and north of the north end of the depot platform, an alarm signal was sounded by several short blasts of the whistle. The peril was perceived by the fireman. He saw the truck as he looked from the cab through the clear space east of the depot.

From the time that Falkenburg jumped on the running board, the three young men were engaged in conversation. The evidence

does not leave that in any doubt. It is an inescapable inference from all of the testimony, however it may be viewed, that up to that point both the deceased were oblivious of both danger and the need for caution. They knew the crossing was much used and that passenger trains passed over it both ways at high speed and without stopping. They probably knew, being residents of the neighborhood, the time at which the train in question was due, but it is not to be assumed that they were aware that it had not already passed.

When their attention was challenged by the alarm whistle, it is fairly clear that the truck was brought to a stop, but not instantly. If it was stopped, it was close to the rail and was started again in an effort to turn sharply to the left and out of danger. The right front wheel passed over the east rail, but for some reason did not "ride" it. For plaintiffs it is claimed that it was caught in the east flangeway of the crossing which for lack of a metal lining had become so widened by wear as to admit the tire of the truck, the result being that the wheel was confined in the flangeway. On that issue the evidence is not all one way and we resolve it in favor of plaintiffs.

The locomotive struck the right rear of the truck, projecting it forward and to the left of the track for a considerable distance. Falkenburg had made a timely leap to safety, but La Forge and Bailey were thrown out so violently that their injuries speedily proved fatal. As already indicated, while the evidence for defendant shows that the statutory station and crossing signals were given, we have considered the case from the standpoint that the verdict on that question is conclusive and that for the purpose of review the negligence of defendant is established.

There remains the usual and troublesome question of contributory negligence. Distracting circumstances, aside from those imposed by the boys themselves, are out of the question. It was broad daylight. The crossing itself was an emphatic warning of danger and the attending necessity for care. The requirement of due care could not be satisfied by the sense of sight alone, if circumstances were

such as to impede the efficient exercise of that sense to procure timely warning of danger on the one hand or reliable assurance of safety on the other. So there is much to the argument that, if the obstructions to view interposed by the buildings on the north prevented the deceased from seeing the train in time, yet the fact remains that their sense of hearing, if used in proper fashion, doubtless would have given them timely warning.

But we do not place decision on that ground. When Falkenburg jumped on the running board of the truck at from 75 to 100 feet from the crossing, there was what may be considered, from the standpoint of a chauffeur and passengers of an automobile, a fleeting view to the north. This view at best was of such a nature as not to afford so sufficient a survey as to measure up to any proper standard of due care, unless at that point the automobile had been stopped to learn whether a train was approaching. No stop was made and the testimony is conclusive that the boys were then too busily engaged otherwise to look up the track northward and east of the depot.

We have considered and given weight to the argument for plaintiffs that, if the boys had looked northward east of the depot, they would not have seen the train, if at that moment it was not on the portion of the track within the field of vision. Assuming that to be the case, what is the situation? Just this: The young men did not stop the car at the 100-foot point or anywhere near it. They did not check its speed. If perchance they looked to the north it was not searchingly, but with only a fleeting glance. No other reasonable inference is possible. They went on their way until within 20 or 25 feet of the track. Their attention was then first challenged by the alarm whistle sounded when the locomotive was within not less than 600 feet of the crossing and approaching it at over 70 feet per second.

We consider it too clear to admit of reasonable opinion to the contrary that due care was not exercised by these unfortunate young men or either of them. If, when they got close to the track, they had been looking, even without listening, it is perfectly obvious—

so much so as not to admit of rational contradiction—they could have stopped in ample time to have avoided the collision.

That conclusion is nearly if not.quite inescapable from a consideration of indisputable physical facts. It is emphasized and confirmed by the clear, consistent and unimpeached testimony of several witnesses. The proof and all its reasonable inferences are two strongly the other way to admit the presumption against contributory negligence. That is a presumption of fact and "never allowed against ascertained and established facts" where there is but one reasonable inference. Lincoln v. French, 105 U. S. 614, 26 L. ed. 1189, considered here in Hawkins v. Kronick C: & L. Co. 157 Minn. 33, 38, 195 N. W. 766.

The principles involved are too familiar to require restatement or discussion. The case is controlled by Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687, and Wesler v. C. St. P. M. & O. Ry. Co. 143 Minn. 159, 173 N. W. 565. In controlling elements the latter is identical with the instant case. Among our more recent decisions are Capretz v. C. G. W. R. Co. 157 Minn. 29, 195 N. W. 531; Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562, and Turner v. M. St. P. & S. S. M. Ry. Co. 164 Minn. 335, 205 N. W. 213. The last case is clearly distinguishable. The majority opinion stresses the presence of a complete obstruction of view by box cars set in by defendant "on a side track so as to encroach on the crossing." There was no such obstruction in the instant case. Again, in that case, there was direct testimony "that Turner also looked both ways when he was on or near the first track." See also Phinney v. Detroit U. Ry. Co. (Mich.) 205 N. W. 124.

The cases were thoroughly tried and there is no suggestion that a new trial would accomplish any good purpose. The orders appealed from are reversed with directions to enter judgment in each case for defendant.

Reversed.

On March 5, 1926, the following opinion was filed:

PER CURIAM.

Respondent's petition for rehearing is denied. It presents noth-

ing new in the way of argument, but does emphasize two features with respect to which counsel for respondents is entitled to have something more said.

It should have been stated in the opinion that the evidence for plaintiffs indicated that a strong wind was blowing from the south at the time of the accident. So the statement in the opinion, to the effect that if the deceased had made timely use thereof their sense of hearing "doubtless would have given them timely warning" of the train's approach, is attended with some qualification. However, that does not alter the conclusion that any reasonable degree of care on their part would have enabled the young men to see the train in time to have prevented the accident. It may be also that we went too far in referring to the evidence as indicating by a "compelling preponderance" that the whistle signals for both stations and crossing were sounded and that the bell was rung. The record may or may not sustain that conclusion. The evidence was conflicting and it is not for us to determine the fact. But, for the reasons stated in the opinion, we considered the determination of that particular issue immaterial because of our conclusion that the whole record compelled us to find contributory negligence as a matter of law.