BYRON R. BIXBY *v.* BOSTON & MAINE RAILROAD.

HARRY TOWNER *v.* SAME.

*Robert W. Upton, Frederic K. Upton, Ira G. Colby* and *Howard H. Hamlin* (*Mr. Frederic K. Upton* orally), for the plaintiffs.

*McLane, Davis & Carleton, Arthur A. Greene, Jr.* and *Stanley M. Brown (Mr. Brown* orally), for the defendant.

JOHNSTON, J. In passing over the railroad crossing of the defendant the plaintiffs were bound to use due care and the driver of the automobile was under the statutory obligation to "proceed cautiously over the crossing." R. L., *c.* 119, *s.* 18. A south bound traveler on the highway has an unobstructed view of the railroad from a point 4,000 feet north continuously to the crossing, and a similar view of the highway may be had from a locomotive. At a point 100 feet north of the crossing, the traveler can see about 2,000 feet of the track north of the crossing. Mr. Bixby testified that when he was about 200 feet away from the crossing he slowed from 35 to 15 miles an hour and that he "asked Mr. Towner to look up the track and he did and he turned way around to do it, and he said it was all right, and I looked down the track." Towner corroborated this in his deposition but at the trial stated that the point where he looked was 800 to 1000 feet north of the crossing. Both plaintiffs agree that the duty of looking for a train from the north was delegated to Towner, that he accepted the responsibility and saw nothing. Regardless of when he looked, where he looked and the number of times he looked, reasonable men must find that Towner was negligent in his job as lookout. He was doing nothing; all that he was asked to do was to turn his head and see with abundant time for that. "He either saw the train or took such an inadequate glance in its direction that he did not notice it. Any careful look would have disclosed it. If he saw the train, his subsequent conduct was careless. . . . If he did not see the train, it was because he was careless in the manner he looked for it. He looked to see if a train was coming but used no care to make his look effective. The precaution of looking demanded that some care be used in taking the look. Assuming that he relied upon the crossing signals and the train's whistle to warn him and that none of these warnings were given, he did not place full reliance upon them." *Niemi* v. *Railroad*, 87 N. H. 1, 3.

The plaintiff Bixby not only was driving the car but as owner had the right to control its entire operation including the lookout for an approaching train. Accordingly the negligence of Towner in performance of the task assigned should be imputed to him. It has been held that an owner present in his car with full power to control the driver's conduct is chargeable with the latter's negligence. *Freeman* v. *Scahill*, 92 N. H. 471; *Tufts* v. *White*, 92 N. H. 158; *Niemi* v. *Rail-*

*road, supra.* A driver with the right of control who asks a passenger to assist in the operation of the car as lookout is responsible for any negligence of the latter. "The negligence of a passenger in acting as a lookout at the request of the driver is imputable to the latter." 2 Berry, Automobiles, *s.* 2.323. *Schauck* v. *Company*, 10 N. J. Misc. 226 (affirmed 110 N. J. Law 16) is cited in support of this principle. This same idea of the responsibility of the driver is reached with different language. "A motorist cannot ordinarily delegate the duty of observation to others nor excuse his failure to look and listen for an approaching train by the fact that he inquired of others sitting with him whether a train was approaching.

"In conformity with this general principle, he cannot delegate any part of the duty in looking in both directions to a passenger, and excuse his own failure to look in one direction by the fact that the passenger was looking that way, to warn him if a train was in view." 3 Blashfield, Automobile Law, *s.* 1749. *Capretz* v. *Company*, 157 Minn. 29; *State ex rel. Hines* v. *Bland*, 237 S. W. 1018 (Mo.). "Ordinarily the duty to look and listen cannot, so far as the driver's right of action is concerned, be delegated to a passenger." 7-8 Huddy, Automobile Law, *s.* 16.

The plaintiffs excepted "to the refusal to give plaintiffs' request no. 5 embodying the last clear chance doctrine." This request was as follows: "If you find that the defendant's fireman saw the automobile in which the plaintiffs were traveling and was actually aware that the plaintiffs were either ignorant or unable to extricate themselves from it, and that after discovery of this situation reasonable care required and time afforded an opportunity for saving action, then you would find the defendant liable, even though the plaintiffs were negligent." This was a correct statement of the law applicable to the facts of the accident, and the plaintiffs were entitled to have the issue of the last clear chance submitted to the jury. The Court did submit this issue with instructions on the subject that cover more than a printed page. The elements of the last clear chance doctrine as outlined in the request of the plaintiffs were stated. "The Presiding Justice was not obliged to adopt the specific language of the request so long as the jury were properly instructed with respect to its subject matter." *Richards* v. *Richards*, 86 N. H. 273, 276. What specific objection the plaintiffs have to the language of the Court was not stated at the time of the objection and the exception. Nor has it been argued by brief or orally. The exception is overruled. *Haines* v. *Insurance Co.*, 59 N. H. 199, 200; *Bourassa* v. *Railway*, 75 N. H. 359,

362; *Gardner* v. *Company*, 79 N. H. 452; *Terrell* v. *Payne*, 81 N. H. 164; *LeBrun* v. *Railroad*, 82 N. H. 170; *Stocker* v. *Railroad*, 84 N. H. 377; *Ware* v. *Railroad*, 93 N. H. 213.

Another exception of the plaintiffs was taken to a ruling permitting certain argument of defendant's counsel. The latter argued to the jury that an application of the emergency brakes would have split the train in two. There was some evidence of this. "Q. And if an emergency stop is made at the rate of fifty miles an hour, a train that size, what happens to the couplings and the connections between the cars? A. They come together and give out."

The plaintiffs also excepted to the instructions of the Court with respect to warning by whistling on the ground that they were restricted to the statutory requirement and not inclusive of the common-law duty of suitable warning. The Court in its charge defined fault generally. "By fault I mean either that the railroad failed in some statutory duty imposed upon it or that the railroad was negligent." Then negligence is given its common-law meaning. Again, the Court said before taking up the matter of causation: "Now furthermore you may find fault in these cases, that is, that the railroad failed in some statutory duty or that either the railroad or Mr. Bixby was negligent, but that is not sufficient." Coming down to specific instructions, the Court said: "The plaintiffs claim that the railroad was negligent in several particulars. They claim that the whistle was not properly sounded, and secondly, that the train which collided with Mr. Bixby's automobile was being operated at an excessive rate of speed. Now the statute law pertinent to this case is as follows:..." Then was quoted the statute concerning whistling. Farther along the Court reverted to the subject of causation and said: "In considering each of these alleged negligent acts, should you find them to be negligent, ... " These instructions did not exclude the common-law duty of due care with respect to giving notice of the approach of the train by use of the whistle, but were sufficient to bring to the attention of the jury such duty. The position of these plaintiffs does not differ appreciably from that of the plaintiffs in *McCarthy* v. *Railroad*, 92 N. H. 149, 154, where they argued in vain that the effect of the instruction in that case "was to preclude consideration of the defendant's duty to exercise reasonable care in general."

The failure of the Court to be more specific is unexceptionable in the absence of any accurate request for instructions concerning the common-law duty of suitable warning. The request upon which reliance is placed was as follows: "4. The law does not justify an

avoidable injury to another. If the defendant's fireman after seeing the automobile in which the plaintiff was traveling could in the exercise of reasonable care have averted the accident by causing the speed of the train to be slackened, or by causing the whistle to be sounded in short blasts as a special warning, then you would be warranted in finding that the defendant was negligent." "Ever since *Gahagan* v. *Railroad*, 70 N. H. 441, 443 it has been well established in this State that everything being equal, the railroad at a grade crossing has the right of way over highway travelers . . . ; and that there is no duty imposed upon the railroad to slow down or stop its train when approaching a grade crossing until such time as it becomes apparent . . . that the highway traveler is not going to stop and give the train its right of way." *Gates* v. *Railroad*, 93 N. H. 179, 181. Nor is there any duty to take other precautions by giving special warning on mere sight of the automobile. The employees of the railroad have the right to assume that the highway traveler will yield such right of way.

In view of the decision that the plaintiffs were guilty of contributory negligence as a matter of law the submission of the issue of Mr. Towner's care in selecting a driver is harmless. The exception thereto is of no avail.

*Judgments on the verdicts.*

MARBLE, C. J., was absent: the others concurred.